[Cite as *State v. Conn*, 2023-Ohio-2669.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA1163 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Justin Conn, | : | |
| Defendant-Appellant. | : | **RELEASED 7/27/2023** |

_____

<u>APPEARANCES</u>:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Austin Ervin, Assistant Prosecuting Attorney, West Union, Ohio, for appellee.
_____

Hess, J.

{¶1}    Justin Conn appeals from a judgment entry on sentence issued by the Adams County Court of Common Pleas following his guilty plea to four counts of obstructing official business and four counts of failure to stop after an accident.  Conn raises two assignments of error asserting that the trial court committed plain error when it did not merge the obstructing official business counts and that the trial court erred in imposing consecutive sentences when it failed to make the requisite findings to do so during the sentencing hearing.  For the reasons which follow, we conclude that the trial court did not commit plain error when it did not merge the obstructing official business counts.  However, we conclude that the trial court did err when it ordered Conn to serve the sentences for the obstruction counts consecutively because it did not make all the findings required by R.C. 2929.14(C)(4) at the sentencing hearing.  Therefore, we clearly

and convincingly find that the order of consecutive sentences is contrary to law, vacate Conn's sentence for his obstructing official business convictions, and remand the case for the limited purpose of resentencing him on those convictions.  We affirm the trial court's judgment in all other respects.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}    In February 2022, the Adams County grand jury indicted Conn on four counts of obstructing official business in violation of R.C. 2921.31(A), fifth-degree felonies because he allegedly "created a risk of physical harm to any person," see R.C. 2921.31(B).  The grand jury also indicted him on four counts of failure to stop after an accident in violation of R.C. 4549.02(A)(1)(a), (b), and (c), first-degree misdemeanors. Each failure to stop count indicated it pertained to a collision Conn was involved in with a different named individual. All eight counts were alleged to have occurred "[o]n or about and between January 19, 2022 and January 21, 2022 in Adams County, Ohio." Conn initially pleaded not guilty.

{¶3}    On March 1, 2022, the trial court modified Conn's bond to approve a new address for him at the Counseling Center in West Union, Ohio.  On March 8, 2022, the court revoked his bond and ordered that a capias be issued for his arrest because it appeared to the court, upon notification by a probation officer, that Conn had left the Counseling Center three days prior and had not contacted the court with a new address. On March 11, 2022, Conn was arrested on the capias.

{¶4}    In April 2022, Conn withdrew his not guilty plea and pleaded guilty.  Conn agreed that he would pay a total of $2,750 in restitution to the four individuals named in the failure to stop after an accident counts but would otherwise be free to argue about

sentencing.  At the change of plea hearing, the trial court asked Conn to describe what happened during the timeframe alleged in the indictment.  Conn testified, "Well, I'll start off with, uh, that day I was cutting wood.  I had, uh, mud all over my shoes.  I had a mat in the back of my truck that didn't really fit my truck.  So, uh, I was cutting wood at my mom's house.  So, I came into town to get, uh, some stuff at AutoZone.  Went down, went down by I, the old IGA."  He "turned left" and "went up" South Street.  Conn further testified:

> Uh, went up that street, didn't see a car on my right.  Started, you know, I stopped at the stop sign.  I, I, uh, side swiped her.  My mat got caught up in my brake.  I backed up.  I tried to, uh, hit my brake.  My gas went.  So, then I went, I went around her about rear-end another truck.  Went up to the other stop sign, ran it because I couldn't stop sideswiped another car.  Got my mat out, tried to stay in the middle lane, and then rear-ended somebody else, and then just freaked out and ran.

Defense counsel stated, "And they rear-ended somebody else," and Conn testified, "And they, then they rear-ended somebody else."  The court asked Conn why he "got out and ran," and Conn testified, "I have no idea."  The court later asked Conn, "Do you, uh, feel that by leaving, uh, and, and not staying at the scene of the various accidents that, uh, that hampered or impeded, uh, the, uh, public official in this case, probably a law enforcement officer in the performance of their duties to investigate the, uh, various, uh, wrecks that occurred?"  Conn stated, "Yes."  The court accepted the guilty plea and ordered a pre-sentence investigation report ("PSI").

{¶5}    On December 22, 2022, the trial court conducted the sentencing hearing.  During it, defense counsel stated, "I don't think that anybody's going to, to argue the fact that the misdemeanor charges in this case would have to run concurrent or in a concurrent manner with the overarching felony cases.  So, um, I'm going to, for purposes of the

sentencing hearing, disregard those today * * * and ask the court to consider, given the fact that this all took place in span of an hour less [sic], there's not an exact timeframe, but [sic]." Conn stated, "Three minutes," and defense counsel stated, "Yeah. Uh, it somewhere, somewhere [sic] more than a minute and, and less than an hour. This was all really one series of events that occurred back on, uh, in January of, um, 2022. I, I believe, um." The court said, "The, on or about between [sic] January 19th and January 21st." Defense counsel stated, "Yeah." Defense counsel later stated:

> And while I realized that there are four specific victims in these matters for Mr. Conn's purposes, these are, this is one, one day that he shouldn't be driving when he's driving. Uh, and while there are the four victims and any [sic] is appreciative of the fact that they need to be recompensed and, and made whole again, and he's willing than [sic] willing to do that. For driving offenses, I would, um, venture to guess that that leaving, you know, sending someone to prison for four years would be excessive in, in Mr. Conn's viewpoint and mine.

> Um, so we'd be asking the court to run the cases concurrently with one another, uh, and give him credit for whatever, whatever time he's got served.

The court then asked defense counsel, "What do you think the victim's viewpoint would be," and defense counsel stated, "They haven't been here. I don't know." The court said, "Okay."

{¶6} The court gave Conn an opportunity to speak. Conn told the court that he had "issues" but was "working on them." The court asked how he was doing that when he had left the place where he was "getting help for the issues." Conn told the court he was "seeing the psych now" and "trying to get meds." He told the court that he had spent 20 years in prison, and the court asked why he kept putting himself "in a position to go back." Conn said, "It's like something inside of me just makes, makes me, uh, want to go. You know what I mean? I don't even know. I can't even explain it." The court told

Conn that it did not know what he meant and that "the wake behind your boat is full of, um, damage to so many people." Conn said, "I already know," and the court said, "I just don't understand it."

{¶7} Subsequently, the court indicated that it had considered the record, oral statements, any victim impacts statements, and the PSI. Among other things, the PSI contains information about Conn's lengthy criminal history and history of substance abuse, including the fact that he attended but failed to complete treatment at the Counseling Center. The PSI also contains details regarding the offenses in this case. The PSI indicates that on January 20, 2022, Conn was driving westbound on South Street at "a very high rate of speed," failed to stop at a stop sign at the intersection of South Street and Cherry Street, and struck a vehicle traveling southbound on Cherry Street through the intersection, disabling that vehicle and causing minor injury to the driver. Conn "continued in his vehicle, still at a high rate of speed westbound on South Street to North Manchester Street (State Route 41)," where he ran another stop sign and struck a vehicle traveling northbound on State Route 41. Conn "then turned southbound on State Route 41 and continued at a high rate of speed in the center left turn lane from South Street to the area of Blaine Drive." He drove "for approximately 1 mile" and rear-ended a vehicle which was stopped in the center turn lane attempting to turn left on Blaine Drive, forcing that vehicle into another vehicle "traveling northbound on State Route 41 at Blaine Drive." Conn fled on foot and officers were unable to locate him that day despite a lengthy search of the area "via foot, drone, and the use of OSP helicopter." Eight days later, two detectives located him and took him into custody. That same day, a sergeant "completed the reports" and "referred the case" to the county prosecutor "for consideration of 4 counts

of Felonious Assault with a Motor Vehicle." The PSI states that Conn "had a total disregard for the public's safety and concern of occupants in the vehicle [sic], nor the school bus that was attempting to drop off children at the intersection at the time of the crash." In addition, the PSI indicates that three of the drivers Conn was involved in collisions with did not provide a victim impact statement, but the driver of the vehicle he rear-ended requested that Conn "be held responsible for his actions" and "receive jail and/or prison time 'for the risk to life he showed.' "

{¶8} The court noted it had also considered the principles and purposes of sentencing under R.C. 2929.11(A) and that the overriding purposes of felony sentencing are "to protect the public from future crime by the offender, as well as others, as well as to punish the offender using the minimum sanctions that the court determines, accomplishes those purposes without imposing an unnecessary burden upon the state or local government resources." The court also noted that to achieve those purposes, "the sentencing court shall consider the need for incapacitating the offender, deterring the offender, and others from future crime, rehabilitating effectively the offender, as well as making restitution to the victim of the offense, the public, or both." In addition, the court indicated it had considered the seriousness and recidivism factors in R.C. 2929.12.

{¶9} The court found that Conn had been convicted, pursuant to his guilty plea, on all counts and stated:

> I do agree that, uh, misdemeanor statutorily must be concurrent with anything imposed in the felony [sic]. Uh, the, uh, just, just for the benefit of the record, um, in light of the history and, and four different people being injured, um, their, their cars being injured, uh, their lives being disrupted, uh, to get to work, pick up their children, everything else, um, the court still reached out to Mr. Conn and tried to get him help. We talked about going to other states to get him out of this environment that didn't work. We

expended a lot of time and energy on that. Um, but we were the ones seeking help, not Mr. [sic] Um, we find Salvation Army [sic].

Conn said, "That's not true." The court asked, "Did you look also?" Conn said, "Huh? It's not true. I am seeking help." The court later said, "So, I would say a lot of per people [sic] would've lost the bet that [I] would send Justin Conn to Salvation Army. But I did with hopes." Conn said, "Everybody deserves a chance." The court stated, "I gave you that chance." Conn stated, "I know, you, I'm, I'm saying everybody deserves a chance. Just cause my name's Justin Conn don't [sic] mean I don't deserve a chance." The court responded:

> No, it, it, whoever has a name with the criminal record behind it and the amount of damage that is, it has nothing to do with name. * * * Um, but for the record, um, the, the number one thing in, in sentencing guidelines is protect the public from future crime by the offender and others, we hope there would be rehabilitation. We hoped he'd be, become productive. Uh, he's been employed previously at Southern Ohio Lumber, uh, and, and he leaves, doesn't report. Uh, it's the second time we've had to issue capias for his arrest. * * *

The court asked Conn about his most recent arrest and then stated, "Um, anyway, so unfortunately Mr. Conn's put the court in a position and himself in a position that, um, he's no longer amenable to the available community control sanctions we were attempting previously."

{¶10} The court sentenced Conn to 8 months in prison on each count of obstructing official business and 90 days of local incarceration on each count of failure to stop after an accident. The court ordered him to serve the sentences on the obstruction counts consecutively and to serve the sentences on the failure to stop counts concurrently with each other and the sentences on the obstruction counts, for an aggregate term of 32 months in prison. The court also ordered him to pay a total of $2,750 in restitution to the

four individuals named in the failure to stop after an accident counts and the costs of prosecution.

**{¶11}** The trial court memorialized Conn's sentence in a judgment entry on sentence. The entry explained the court may require the offender to serve prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender," "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of three additional circumstances applies. The court initialed two of the three circumstances, i.e., "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct" and "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." This appeal followed.

## II. ASSIGNMENTS OF ERROR

**{¶12}** Conn presents two assignments of error:

First Assignment of Error: The trial court erred in imposing consecutive sentences when it failed [to] make the mandatory findings during the sentencing hearing.

Second Assignment of Error: The trial court committed plain error when it did not merge the four counts of obstructing official business.

We will address the assignments of error out of order.

### III. MERGER

{¶13} In the second assignment of error, Conn contends that the trial court committed plain error when it did not merge the four counts of obstructing official business. Conn asserts that the basis for the obstruction charges was him "leaving the scene of various accidents which impeded law enforcement in the performance of their duty to investigate the accidents." He asserts that the victim of each obstruction offense was the public and that "[j]ust because there were four separate victims of a vehicle accident does not mean that official business was obstructed four separate times." He concedes that the indictment alleges the offenses "took place sometime within a three-day time frame" and that "[t]he record is not clear exactly in what timeframe the separate accidents occurred." However, he maintains that "everything in the record points towards everything happening as one single course of conduct." He asserts that "if all the accidents happened close in time to one another there would have presumably been only one investigation," and him "leaving the scene may have obstructed that investigation, but that would be it." And he asserts that upon considering the merger factors, "it becomes clearer that all charges of obstructing official business should merge" because the offenses "did not cause separate identifiable harm to the public," "were not committed separately," and "were not committed with a separate animus or motivation."

{¶14} "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *State v. Bailey*, ___ Ohio St.3d ___, 2022-Ohio-4407, ___ N.E.3d ___, ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "To prevail under the plain-error doctrine," Conn "must establish that 'an error occurred, that the error was

obvious, and that there is "a reasonable *probability* that the error resulted in prejudice,"

meaning that the error affected the outcome of the trial.' " (Emphasis added in *Rogers*.)

*Id.*, quoting *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶

66, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

"The elements of the plain-error doctrine are conjunctive: all three must apply to justify an

appellate court's intervention." *Id.* at ¶ 9.

> **{¶15}** R.C. 2941.25 states:
>
> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶16}** "In determining whether offenses are allied offenses of similar import within

the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct,

the animus, and the import." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d

892, at paragraph one of the syllabus. "Two or more offenses of dissimilar import exist

within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses

involving separate victims or if the harm that results from each offense is separate and

identifiable." *Id.* at paragraph two of the syllabus. "Under R.C. 2941.25(B), a defendant

whose conduct supports multiple offenses may be convicted of all the offenses if any one

of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the

conduct shows that the offenses were committed separately, or (3) the conduct shows

that the offenses were committed with separate animus." *Id.* at paragraph three of the

syllabus.  "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions."  *Bailey* at ¶ 11.

{¶17}  Conn's merger argument pertains to the four counts of obstructing official business.  R.C. 2921.31, the statute regarding that offense, states:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
>
> (B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree.  If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

The term "public official" includes law enforcement officers.  R.C. 2921.01(A).

{¶18}  Even if we were to assume that the trial court erred by not merging the four obstructing official business counts, the facts of the case indicate that such an error was not obvious.  "Application of the law governing the merger of allied offenses is dependent on the specific facts of each case."  *Bailey*, ___ Ohio St.3d ___, 2022-Ohio-4407, ___ N.E.3d ___, at ¶ 16.  The merger analysis Conn urges us to adopt assumes the existence of a fact which is key to that analysis—that because the record gives some indication that the four accidents occurred close in time, law enforcement conducted only one investigation in which he hampered or impeded a public official in the performance of the public official's lawful duties.

{¶19}  However, the circumstances surrounding the accidents vary more than Conn's appellate brief indicates.  Citing his testimony at the change of plea hearing, Conn

claims that "his car mat got caught in the brake" which "caused his vehicle to go out of control, striking multiple vehicles." However, Conn testified:

> Uh, went up that street, didn't see a car on my right. Started, you know, I stopped at the stop sign. I, I, uh, side swiped her. My mat got caught up in my brake. I backed up. I tried to, uh, hit my brake. My gas went. So, then I went, I went around her about rear-end another truck. Went up to the other stop sign, ran it because I couldn't stop sideswiped another car. Got my mat out, tried to stay in the middle lane, and then rear-ended somebody else, and then just freaked out and ran.
>
> * * *
>
> And they, then they rear-ended somebody else.

In this testimony, Conn indicated the first accident happened when, after stopping at a stop sign, he side-swiped a vehicle which he did not see. A mat then got caught in his brake, and the second accident occurred when he continued driving, ran a different stop sign due to his inability to brake, and side-swiped a second vehicle. He then extricated the mat from his brake. But instead of stopping, he continued driving, rear-ended a third vehicle which then rear-ended a fourth vehicle, and fled on foot. The PSI indicates that Conn was traveling at a high rate of speed when each accident occurred, that the first accident actually occurred when he ran a stop sign at the intersection of South Street and Cherry Street, that the second accident occurred when he ran a stop sign at the intersection of South Street and State Route 41, and that the third and fourth accidents occurred after he turned onto State Route 41, drove about a mile, and rear-ended a third vehicle, forcing it into a fourth vehicle. The PSI also indicates that a sergeant completed "reports" in connection with these matters.

{¶20} The fact that the accidents did not all occur at the same location or in the same manner and the fact that they resulted in more than one report by law enforcement

undercuts Conn's assumption that law enforcement conducted only one investigation in which he hampered or impeded a public official in the performance of the public official's lawful duties. Therefore, the trial court's alleged error in not merging the four obstruction counts is not obvious. And because the trial court did not commit plain error when it did not merge the four counts of obstructing official business, we overrule the second assignment of error.

### IV. CONSECUTIVE SENTENCES

{¶21} In the first assignment of error, Conn contends that the trial court erred in imposing consecutive sentences when it failed to "make the mandatory findings," i.e., the findings required by R.C. 2929.14(C)(4), during the sentencing hearing. Conn asserts that "[t]here is nothing in the record that would indicate consecutive sentences were necessary to protect the public or punish" him. He maintains that even though the court discussed how he "had been given opportunities for treatment during the pendency of this case and been unsuccessful," "[n]one of this goes to the need to protect the public or punish" him. He asserts that the court did not find that consecutive sentences are not disproportionate to his conduct or the danger that he poses to the public. Conn also asserts that the trial court did not find that he committed the offenses "while under community control or postrelease control, that no single prison term adequately reflects the seriousness of his conduct," or that his criminal history "demonstrates that consecutive sentences are necessary." He states that "[i]t does not appear that any" of his criminal history "is addressed at all during the sentencing hearing." He also asserts that even if we "could discern from the record that the trial court made some of the necessary findings, there is nothing in the record discussing the proportionality of the

sentence." And Conn asserts that even though the trial court made the necessary findings to impose consecutive sentences in its sentencing entry, the court's failure to make the findings during the sentencing hearing requires a remand for a new sentencing hearing.

**{¶22}** Under R.C. 2953.08(A)(4) "a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant" on the ground that "[t]he sentence is contrary to law." "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under [R.C. 2953.08] or may vacate the sentence and remand the matter to the sentencing court for resentencing" "if it clearly and convincingly finds" that the record does not support certain findings by the sentencing court, including consecutive sentence findings under R.C. 2929.14(C)(4), or "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

**{¶23}** R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶24} "[B]ased on the language of R.C. 2929.14(C)(4), the consecutive-sentence findings are not simply threshold findings that, once made, permit any amount of consecutively stacked individual sentences.  Rather, these findings must be made in consideration of the aggregate term to be imposed."  *State v. Gwynne*, ___ Ohio St.3d ___, 2022-Ohio-4607, ___ N.E.3d ___, ¶ 1.[1]  "R.C. 2929.14(C)(4) requires trial courts to consider the overall number of consecutive sentences and the aggregate sentence to be imposed when making the necessity and proportionality findings required for the imposition of consecutive sentences."  *Id.* at ¶ 31.

{¶25} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *."  *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.  However, the court "has no obligation to state reasons to support its findings" and has no obligation "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry."  *Id.*  "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."  *Id.* at ¶ 29.

{¶26} "The first step in consecutive-sentence review is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made—i.e., the first

---

[1] The state has moved the Supreme Court of Ohio to reconsider its decision in *Gwynne*; however, the court has not yet ruled on that motion.  *State v. Gwynne*, Supreme Court Case No. 2021-1033, 1/3/23 Motion for Reconsideration.

and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c)." *Gwynne* at ¶ 25. "If the trial court fails to make these findings, and that issue is properly raised on appeal, then the appellate court must hold that the order of consecutive sentences is contrary to law and either modify the sentence or vacate it and remand the case for resentencing." *Id.* If the trial court fails to make the requisite findings at the sentencing hearing, the imposition of consecutive sentences is contrary to law even if the sentencing entry includes the findings. *See State v. Brickles*, 4th Dist. Pickaway No. 19CA16, 2021-Ohio-178, ¶ 9, 11.

{¶27} In this case, the trial court indicated that it was considering the need to protect the public, the need to punish Conn, and the PSI, which details Conn's criminal history. We can discern from the trial court's comments about "the history," the harm Conn caused to the other four drivers, and his lack of effort at rehabilitation that the court found a need to protect the public from future crime or to punish Conn. We can also discern the court found Conn's history of criminal conduct demonstrated that consecutive sentences are necessary to protect the public from future crime by him based on statements the court made regarding the "wake behind" Conn's "boat," i.e., his criminal history, being "full of * * * damage to so many people" and indicating the court's belief that people would be surprised the court sent Conn to the Salvation Army when his record and the amount of damage he had caused indicated he did not deserve another chance.

{¶28} However, we cannot discern that the trial court made the requisite proportionality finding. The state contends that "the trial court satisfied its obligation to make a finding of proportionality" because after defense counsel essentially argued that consecutive sentences would be excessive for what he described as "driving offenses"

and asked the court to impose concurrent sentences, the trial court asked, "What do you think the victim's viewpoint would be?"  The state asserts that "[t]his dialogue * * * provides evidence that the trial court did consider the seriousness of the offense and the appropriateness and proportionality of concurrent versus consecutive sentences, even if not explicitly stated on the record.  The trial court seemed to allude to the idea that regardless if Mr. Conn committed a driving offense or not, a concurrent sentence would not be sufficient."  However, we fail to see how the trial court inquiring about how the victims would view concurrent sentences shows the court found that consecutive sentences are not disproportionate to the seriousness of Conn's conduct and to the danger he poses to the public.

{¶29} The trial court erred when it imposed consecutive sentences for the obstructing official business counts.  Because the trial court failed to make all the requisite findings under R.C. 2929.14(C)(4) at the sentencing hearing, we clearly and convincingly find that the order of consecutive sentences is contrary to law.  *See Brickles*, 4th Dist. Pickaway No. 19CA16, 2021-Ohio-178, at ¶ 9, 11.  Accordingly, we sustain the first assignment of error, vacate Conn's sentence for his obstructing official business convictions, and remand the case for the limited purpose of resentencing him on those convictions.  *See generally State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 2, 110, 252-262, (affirming defendant's convictions and capital sentences but vacating his sentence for his noncapital convictions, which the trial court had ordered to run consecutively, and remanding the case for the limited purpose of resentencing him on those convictions because the trial court failed to make all the requisite findings to impose consecutive sentences).

## V.  CONCLUSION

**{¶30}** For the foregoing reasons, we sustain the first assignment of error and overrule the second assignment of error.  We affirm the trial court's judgment in part, vacate it in part, and remand for further proceedings consistent with this decision.

JUDGMENT AFFIRMED IN PART
AND VACATED IN PART.
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND VACATED IN PART.  CAUSE REMANDED.  Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ADAMS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**