[Cite as *State v. Brummett*, 2025-Ohio-5307.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

State of Ohio,                          :

    Plaintiff-Appellee,            :            Case No. 24CA15

    v.                                     :

                                           :            DECISION AND
Rufus Lee Brummett,                     :            JUDGMENT ENTRY

                                           :
    Defendant-Appellant.            :

_____

APPEARANCES:

Christopher Bazeley, Cincinnati, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, and Adam J. King, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Appellant, Rufus Brummett, appeals the judgment of the Highland County Court of Common Pleas convicting him of three counts of rape, all first-degree felonies in violation of R.C. 2907.02(A)(1)(b).  On appeal, appellant contends 1) that his conviction for count three of rape was not supported by legally sufficient evidence or the weight of the evidence; and 2) that the trial court erred when it imposed consecutive sentences.  Because we conclude appellant's conviction for rape under count three was supported by sufficient evidence and was not against the manifest weight of the evidence, appellant's first assignment of

error is overruled. However, because we conclude the trial court erred in its imposition of consecutive sentences, we find merit to the argument raised under appellant's second assignment of error. Accordingly, the judgment of the trial court is affirmed in part, vacated in part, and remanded for resentencing.

FACTS

{¶2} On May 7, 2024, appellant was indicted on three counts of rape, all first-degree felonies in violation of R.C. 2907.02(A)(1)(b). The first count alleged the victim was less than 10 years old at the time and that the offense occurred between April 9, 2019, and April 8, 2020. The second count alleged that the victim was less than 13 years old at the time and that the offense occurred between April 9, 2020, and April 8, 2021. The third count alleged that the victim was less than 13 at the time and that the offense occurred between April 9, 2021, and April 8, 2022.

{¶3} The indictments stemmed from a report made to law enforcement by M.W., in whose care the minor child victim, C.W., was placed after she had been removed from the home of her biological mother. Appellant lived in the home with M.W., C.W., and several other children during the times contained in the indictment and appears to have been related to the child in some manner which is unclear, at times being referred to as a cousin and at other times being referred to as an uncle. The record reflects that at all times herein, the parties lived in a two-

story, three-bedroom house where M.W. and her husband slept downstairs and the rest of the residents slept upstairs. Appellant shared a bedroom upstairs with the victim's older brother and sister, and the victim slept in the other bedroom upstairs, which she shared with her younger sister.

{¶4} After the report was made, appellant was interviewed by law enforcement. Upon being confronted with the allegations, appellant made several incriminating statements. Further, after the report was made, the victim was taken to The Mayerson Center at Cincinnati Children's Hospital where she was interviewed by forensic interviewer, Cecilla Hicks.

{¶5} As the matter proceeded towards trial, appellant requested the State provide a bill of particulars. The State filed a Notice of Service of Bill of Particulars on June 5, 2024, however, the actual bill of particulars that was provided to the defense was not filed with the clerk and is not part of the record. Thereafter, the matter was tried to a jury on September 30, 2024.

{¶6} The State introduced five witnesses. The first witness was the victim, C.W., who testified regarding 4 or 5 specific incidents that occurred with appellant over a period of years when she was between the ages of 9 and 11. In order to establish timeframes, C.W. stated either her age, the grade she was in, or the teacher she had at the time of each incident. She testified that the first incident occurred when she was 9 years old, was in second grade, and was in Mr.

Schillings' class. She testified that she had gone to appellant's bedroom and climbed into bed with him because she was scared. She testified that appellant took her clothes off of her and used his hands to touch her "down where her legs were." She further testified that during that incident, or possibly during another incident when she was still in Mr. Schillings' class, that appellant used his mouth and his fingers on her. She stated "[h]e would normally use his tongue and his mouth on me[]" explaining that he would put his tongue and fingers "down there." She stated that he sometimes put his fingers inside her and that it hurt her when he did that.

{¶7} She testified that the next incident occurred when she was ten years old and was in Mrs. Coil's class. She explained that she was sleeping on appellant's bedroom floor and that appellant got on the floor with her, took her clothes off, and "used his hands again." She explained that he was using his hands and "touching her parts." She explained that "her parts" were "down here." She stated that although his fingers did not go inside of her during that incident, "[h]e touched [her] with his parts" and also touched her with his mouth "down here." She testified that he also used his tongue.

{¶8} She testified that the next incident occurred when she was still in Mrs. Coil's class. She explained that she was sleeping on the floor under her loft bed when appellant came into her room and pulled her by her legs out from under the

bed.  She testified that he took her clothes off, "use[d] his hands * * * on [her] part[,]" and that he was "touching [her] with his fingers."  She testified that she remembered that it hurt and stated that it usually hurt when he put his fingers inside her.

{¶9} The last incident she testified about took place when she was in fifth grade in Mrs. Pollard's class.  She testified that she had fallen asleep in appellant's bedroom along with all of her other siblings after they had watched a movie.  She testified that appellant got on the floor with her and tried to put "his part," which she agreed was "the part that he pees from," close to her face.  She testified that he was touching where her chest was and that as she was struggling against him to get up, she could feel the "part where he pees from" "like on [her] leg and stomach."  Her testimony also indicated that appellant ejaculated onto her, although she did not understand what that was until she asked her brother later.  When asked if appellant used his mouth on her during that incident, she stated no, but then when asked if appellant "[k]iss[ed" on [her] private parts," she stated "yeah."  However, she denied that appellant used his tongue during that incident.

{¶10} The State also introduced testimony from Mayerson Center forensic interviewer, Cecilla Hicks; the victim's brother, J.B.; the victim's custodian, M.W. (who the victim consistently referred to as her mother); and Detective Sergent Vincent Antinore, who interviewed appellant after the initial report was made.

Antinore testified that appellant told him "that he remembered an occasion waking up and his face was laying on the thigh, right next to the vagina of [the victim] and [the victim's] clothes had been removed." He testified appellant further stated that "most of the incidents took place on Locust Road," which Antinore understood to be an acknowledgement that more than one incident had taken place, even though appellant only described one incident. He further testified that appellant referred to the incident as an "accident from hell."

{¶11} Appellant testified on his own behalf at trial and denied any wrongdoing. He testified that he was fibbing when he told the detective that he woke up with his head on the victim's leg, stating as follows: "She wasn't in my bed. But then after that when she said that, you know, that I was asleep and everything, I figured that I could get her in trouble and say, she was naked in my bed * * *."

{¶12} The jury ultimately found appellant guilty of all three charges contained in the indictment. The trial court sentenced appellant to a lifetime prison term without the possibility of parole on count one, a prison term of ten years to life on count two, and a prison term of ten years to life on count three, all to be served consecutively. It is from the trial court's final judgment that appellant now brings his timely appeal, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

I.      BRUMMETT'S CONVICTION FOR COUNT THREE OF RAPE WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE OR THE WEIGHT OF THE EVIDENCE.

II.     THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES.

ASSIGNMENT OF ERROR I

{¶13} In his first assignment of error, appellant contends that his conviction for rape under count three of the indictment was not supported by sufficient evidence and was against the manifest weight of the evidence.  The State counters by arguing that the evidence presented at trial was sufficient to prove the element of "sexual conduct," which is the only element of the offense appellant appears to challenge on appeal.  The State further argues that the conviction was not against the manifest weight of the evidence.

Standard of Review

{¶14} Because appellant challenges both the sufficiency of the evidence and the manifest weight of the evidence, we initially set forth both standards of review.

{¶15} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the verdict as a matter of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), syllabus; *State v. Blevins*, 2019-Ohio-2744, ¶ 18 (4th Dist.).  When reviewing the

sufficiency of the evidence, an appellate court's inquiry focuses primarily on the adequacy of the evidence; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

{¶16} Furthermore, under the sufficiency of the evidence standard, a reviewing court does not assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, *supra*, at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *See, e.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶17} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, *supra*, at 387. "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus. A court that considers a manifest weight challenge must " 'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.' " *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. However, the reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), in turn quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997).

{¶18} Thus, an appellate court will generally defer to the trier of fact on evidence weight and credibility issues, as long as a rational basis exists in the record for the fact-finder's determination. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight."). Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *Accord Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins, supra*, at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990) (a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it).

{¶19} Consequently, when a court reviews a manifest weight of the evidence claim, a court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins, supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *accord McKelton* at ¶ 328. Finally, a reviewing court should find a conviction against the manifest weight of

the evidence only in the " 'exceptional case in which the evidence weighs heavily

against the conviction.' " *Thompkins, supra*, at 387, quoting *Martin, supra*, at 175;

*accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d

479, 483 (2000).

Legal Analysis

{¶20} Here, appellant challenges his conviction for rape under count three of

the indictment.  He only argues that the State failed to prove one element of the

offense, in particular that "sexual conduct" occurred between himself and the child

during the timeframe specified in count three.  He concedes that the victim testified

during direct examination that he had "kissed" her private parts during that

encounter, but he argues that she failed to testify that such conduct occurred upon

being cross-examined.  He further argues that without penetration, no rape

occurred.  In support of this argument, he cites to the victim's testimony during

cross-examination indicating that although appellant put his penis close to her face

and touched other parts of her body with it, she denied that he touched her "down

there."

{¶21} In response, the State contends that based upon the victim's

testimony, "it is clear that Appellant engaged in the act of cunnilingus when he

used his lips to kiss V's 'private area.' "  The State argues that the evidence

presented at trial was legally sufficient to support the conviction for rape and

further, that the conviction was not against the manifest weight of the evidence.

{¶22} The record before us demonstrates that the jury found appellant guilty

of count three, which charged appellant with rape in violation of R.C.

2907.02(A)(1)(b), and which states as follows:

> (A)(1) No person shall engage in sexual conduct with another when any of the following applies:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

R.C. 2907.01 defines "sexual conduct" and states as follows:

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

The statute further defines "sexual activity" as follows: " 'Sexual activity' means

sexual conduct or sexual contact, or both."

{¶23} Although there is no statutory definition for cunnilingus, the Ohio

Jury Instructions define the term and state as follows: " 'Cunnilingus' means a

sexual act committed with the mouth and the female sex organ." 2 OJI-CR

507.02(A)(6). Multiple cases clarify and confirm that simply placing one's mouth

on a female's genitals accomplishes the act of cunnilingus and penetration is not required. *See State v. Lynch*, 2003-Ohio-2284, ¶ 86 (where the Supreme Court of Ohio rejected an argument that penetration was required for cunnilingus to have occurred, explaining that "[p]enetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by the placing of one's mouth on the female's genitals"). *See also State v. Coleman*, 1987 WL 13252, *1 (1st Dist. 1987) ("* * * [W]e can find no authority which requires  penetration of the female sex organ by the mouth to establish cunnilingus. Therefore, in this case, the showing of contact between the female sex organ and the mouth was sufficient to establish cunnilingus."); *State v. Ramirez*, 98 Ohio App.3d 388, 393 (3d Dist. 1994) (observing that courts have rejected arguments "that some penetration was required to complete the act of cunnilingus" and agreeing with those holdings), citing *State v. Bailey*, 78 Ohio App.3d 394, 396 (1st Dist. 1992) ("[W]e hold that the law requires no further activity to constitute cunnilingus beyond the placing of one's mouth on the female's vagina."); *State v. Younger*, 2006-Ohio-296, ¶ 22 (8th Dist.) ("The evidence in the case at bar demonstrates that the appellant engaged in sexual conduct known as cunnilingus when he placed his mouth on the victim's vagina."), reversed in part on other grounds in *In re Ohio Criminal Sentencing Statutes Cases*, 2006-Ohio-3663, ¶ 7; *State v. Goller*, 2024-Ohio-5983, ¶ 53 (3d Dist.) (" 'Penetration of a victim's bodily orifice is not . . . required for

"cunnilingus," which involves licking or oral stimulation of the vulva.' "), quoting

*State v. Brewer*, 2004-Ohio-3572, ¶ 33 (2d Dist.).

{¶24} The victim herein testified as follows on direct examination regarding an incident that occurred in appellant's bedroom in 2021 when she was 11 years old and in Mrs. Pollard's class:

Q:      And what do you remember happening?

A:      He . . . so, we . . . me and my siblings were sleeping in his room because we were watching a movie. And I was sleeping between one of my sibling's bed and his bed.

Q:      And then what?

A:      He got down there and started laying next to me.

Q:      And what did he do to you?

A:      He was trying to put his part like close to my face.

Q:      And what did you do when he tried to put his part close to your face?

A:      I was just trying to get up.

Q:      And when you are talking about his part, are you talking about the part he pees from?

A:      Yes.

Q:      And at that time did he touch any of your parts with his body?

A:      He was touching up here where my chest is.

Q:      Okay and then what happened?

A:    I was trying to get up but then he wasn't letting me up.

Q:    And then what happened next?

A:    I told him to stop before I tell my mom.

Q:     Did he rub his parts on you?

A:    When he was coming up to me I could feel it like on my leg and my stomach.

Q:    And when you say you could feel it on your leg and stomach, what could you feel?

A:    The part where he pees from.

Q:    And did anything come from that part?

A:    The cum that was on me, which I didn't know what that was, so I asked my older brother.

Q:    And what that, when . . . during this time when that was happening, did he use his fingers or his mouth on you?

A:    He was like kissing up on my body.

Q:    He was what?

A:    He was kissing up on my body.

Q:    Okay, so did he use his mouth on your private parts?

A:    No.

Q:    Kiss on your private parts?

A:    Yeah.

Q:    And when he kissed on your private parts did he use his tongue?

A:    No.

Q:    And when you talk about your private parts, what part are you talking about?

A:    Down here.

Q:    Down here, okay.

A.    Um-hum.[1]

{¶25} The foregoing testimony establishes the victim testified that during the incident in question, appellant "kissed" her private parts, which she separately established meant her vaginal area. Although she did not repeat this testimony during cross-examination, the transcript reveals that defense counsel did not ask her that exact question, unlike the prosecutor. The overall tenor of the transcript indicates that the victim tended not to volunteer information beyond what was asked but rather appeared to consistently limit her answer to the specific questions asked. Further, although the victim stated no in answer to the question whether appellant used his mouth on her private parts, she then answered yes when asked if appellant "kissed" her private parts but denied that he used his tongue on that occasion.

---

[1] Elsewhere in the victim's testimony she clarified that "down here" meant "her area," which was "[d]own where [she] pees at." She further confirmed on cross-examination that "down where [she] pees at" was her "vaginal area."

{¶26} Based upon the above-cited case law, this testimony, if believed by the jury, was sufficient to establish the element of sexual conduct under the rape charge. Further, we cannot conclude that appellant's conviction was against the manifest weight of the evidence. Despite the victim's obvious inconsistency in her testimony during the direct examination, the jury, as the trier of fact, was free to accept or reject her version of events. Defense counsel had the opportunity to clear up that inconsistency during cross-examination but elected not to do so, likely as a matter of trial strategy so as not to draw attention to that damaging testimony.

{¶27} Importantly, the victim testified to four, possibly five, specific incidents that occurred over the course of three to four years. Although the prosecutor focused on these specific incidents, the victim stated that appellant committed these offenses weekly, to the point that she even slept under her bed or in her closet to try to hide from him. Focusing only on the particular incidents of which the victim testified and eliminating from consideration the incident that occurred when the victim was in Mrs. Pollard's class, there is evidence that appellant raped the victim via digital penetration twice and via performing cunnilingus on her twice. As set forth above, the victim's testimony reflects that appellant typically raped her both digitally and orally during these incidents. Thus, the evidence in the record supported charging appellant with additional counts of rape beyond the three he was indicted for. *See State v. McKinney*, 2024-Ohio-

4642, ¶ 90 (4th Dist.) ("Different types of rape committed within the same sexual assault such as 'vaginal intercourse, cunnilingus, and digital penetration constitute separate crimes' 'with a separate animus[.]' ").

{¶28} We must be mindful that when charging defendants with crimes inflicted upon children in situations where the abuse was ongoing over a long period of time, " '[a] precise time and date of an alleged offense are not ordinarily essential elements.' " *State v. Birt*, 2013-Ohio-1379, ¶ 32 (12th Dist.), quoting *State v. Blankenburg*, 2012-Ohio-1289, ¶ 43 (12th Dist.), in turn citing *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). As further explained in *Birt*:

> In sexual abuse cases involving children, it may be impossible to provide a specific date. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases." *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011-Ohio-5226, 2011 WL 4790887, ¶ 12, quoting *State v. Elkins*, 5th Dist. No. 2010-CA-104, 2011-Ohio-3611, 2011 WL 2937313, ¶ 26. However, there are some exceptions where dates and times are essential and the failure to provide specific dates and times may prejudice the accused. One such exception is where the accused asserts an alibi. *State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311, 2010 WL 2026779, ¶ 19. Likewise, where the age of the victim is an element of the crime charged and the victim bordered on the age required to make the conduct criminal, a specific date becomes essential and the failure to provide one is more likely to prejudice the accused. *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011-Ohio-5226, 2011 WL 4790887, ¶ 15.

*Birt* at ¶ 32.

{¶29} As in *Birt,* we are confronted with neither situation in the case at bar. Appellant did not assert an alibi, but rather defended against the charges by asserting that the victim was lying. Further, all of the charges in the indictment specified that the child was under the age of 13 at the time of the offenses and the child's testimony detailing the commission of 2 instances of rape by digital penetration and 3 instances of cunnilingus all occurred well before her 13th birthday. Thus, there was no concern that the child's age had exceeded the age limit set forth in the indictment. As such, the date of the offenses was not an essential element.

{¶30} Taking all of the above into consideration and assuming arguendo that the evidence offered to support count three was inconsistent, there was more than enough evidence introduced by the State to support three counts of rape perpetrated by appellant against the victim, a child of only nine years old when the abuse began, understanding the difficulty in providing specific dates when abuse is regular and ongoing over a period of years. Thus, having found no merit to appellant's arguments that his conviction for rape under count three was not supported by sufficient evidence and was against the manifest weight of the evidence, his first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶31} In his second assignment of error, appellant contends that the trial court erred when it imposed consecutive sentences. Appellant argues that although the trial court recited the necessary findings for imposing consecutive sentences in the sentencing entry, it failed to make the necessary findings at the sentencing hearing. The State contends the trial court made the necessary findings both during the sentencing hearing and in the sentencing entry and further argues appellant's second assignment of error lacks merit. However, for the following reasons, we agree with appellant's argument and find that the trial court erred by failing to make the necessary findings during the sentencing hearing and therefore erred in imposing consecutive sentences. As a result, the consecutive sentences imposed by the trial court are contrary to law.

Standard of Review

{¶32} When reviewing felony sentences, appellate courts apply the standard set forth in R.C. 2953.08(G)(2). *State v. Spencer*, 2024-Ohio-59, ¶ 13 (4th Dist.). *See e.g. State v. Nelson*, 2023-Ohio-3566, ¶ 63 (4th Dist.). R.C. 2953.08(G)(2)(a) provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" "if it clearly and convincingly finds either of the following:"

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶33} The Supreme Court of Ohio has recognized that R.C. 2953.08(G)(2) means that appellate courts ordinarily " 'defer to trial courts' broad discretion in making sentencing decisions.' " *State v. Gwynne*, 2023-Ohio-3851, ¶ 11, quoting *State v. Rahab*, 2017-Ohio-1401, ¶ 10; *see also State v. Marcum*, 2016-Ohio-1002, ¶ 23 (appellate court's review of whether sentence is clearly and convincingly contrary to law under R.C. 2953.08(G) is deferential to sentencing court); *State v. Collins*, 2024-Ohio-2891, ¶ 22 (4th Dist.). Thus, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative. *Gwynne, supra*, at ¶ 13. Moreover, "clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Legal Analysis

{¶34} Appellant argues that the trial court failed to make the necessary consecutive sentence findings during the sentencing hearing. More specifically, appellant contends that although the trial court made the first two findings required under R.C. 2929.14(C)(4), it failed to make the third finding required by R.C. 2929.14(C))(4)(b).

{¶35} In general, a statutory presumption exists in favor of concurrent sentences pursuant to R.C. 2929.41(A) and R.C. 2929.14(C)(4) governs the imposition of consecutive terms of imprisonment. *Collins, supra*, at ¶ 23. To justify the imposition of consecutive terms of imprisonment, "a trial court must make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but the court has no obligation to state reasons to support its findings." *State v. Blair*, 2019-Ohio-2768 ¶ 52 (4th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, syllabus. This Court has explained the findings required to support the imposition of consecutive sentences as follows:

> "Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences a trial court must find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; *and* (3) that one of three circumstances specified in the statute applies."

(Emphasis added.) *Cottrill* at ¶ 14, and *Collins*, ¶ 24, quoting R.C.

2929.14(C)(4)(a)-(c).

{¶36} Further, as we outlined in *Cottrill*, and more recently in *Collins*, the

three circumstances are:

> "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, *and* the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

(Emphasis added.) *Cottrill* at ¶ 14, and *Collins*, ¶ 24, quoting R.C.

2929.14(C)(4)(a)-(c).

{¶37} Here, upon imposing consecutive sentences during the sentencing

hearing, the trial court stated as follows:

> The Court is ordering [the sentences] be served consecutively to one another. The reason for that is that the Court feels that the harm in this case is so great, that it would not be adequately [sic] reflect the seriousness of the conduct and the harm that has been caused to this victim. And it is also for the protection of the public. These sentences are harsh, they're the maximum but they're mandated, there is no other sentence. And it's my intent

to make sure that you spend the rest of your life in prison because I think that is the only way that other children will be protected. Because I can tell you that I have yet to see a case in my 48 and a half years where the offender got caught the first time or the last time. You know, offenders that prey on children, they continue if they're not . . . and the only way you stop them is to put them in prison. And so, for the protection of the public, I think it is necessary, I think it is again the sentence, the harm is so great to this victim and to the public in general, because of having our children victimized, the public suffers, too. And the sentence is not disproportionate to that harm. Quite honestly, there is no sentence that could compensate her for the harm that you've caused.

Thus, although the trial court made the required findings under R.C. 2929.14(C)(4) regarding the need to protect the public from future crime or punish the offender, as well as that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public, it failed to make a finding regarding which factor, either (a), (b), or (c) under R.C. 2929.14(C)(4), also applied.

{¶38} In its sentencing entry, the trial court stated that factor (b) applied, which provides as follows:

At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

However, the trial court made no such finding during the sentencing hearing itself.

{¶39} Based upon the foregoing, we conclude that despite including the necessary findings in the sentencing entry, the trial court failed to make the findings required by R.C. 2929.14(C)(4) prior to imposing consecutive sentences during the sentencing hearing. As a result, the consecutive sentences imposed by the trial court are contrary to law. *See State v. Farmer*, 2024-Ohio-6063, ¶ 69 (4th Dist.), citing *State v. Conn*, 2023-Ohio-2669, ¶ 29 (4th Dist.). Accordingly, we sustain appellant's second assignment of error, vacate appellant's sentence, and remand the case for the limited purpose of resentencing him. *Id.*

**JUDGMENT AFFIRMED IN PART, VACATED IN PART, AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, VACATED IN PART, AND CAUSE REMANDED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of appellate Procedure.

Hess, J. and Wilkin, J., concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**