[Cite as *In re A.K.*, 2025-Ohio-2935.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

**RELEASED 8/13/2025**

| | | |
|---|---|---|
| In re: A.K. (DOB: 11/12/2024): | : | Case No. 25CA8 |
| | : | |
| Adjudicated Abused, Neglected, | : | <u>DECISION AND</u> |
| Dependent Child. | : | <u>JUDGMENT ENTRY</u> |

_____

<u>APPEARANCES</u>:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, and Molly Bolek, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

_____

Hess, J.

{¶1}   The mother of A.K. appeals a judgment of the Highland County Court of Common Pleas, Juvenile Division, which adjudicated A.K. an abused, neglected, and dependent child and ordered that the child remain in the temporary custody of the Highland County Department of Job & Family Services, Child Protection Unit (the "Agency").[1]  Mother presents three assignments of error asserting that the juvenile court erred in finding by clear and convincing evidence that A.K. was an abused, neglected, and dependent child.  For the reasons which follow, we overrule the assignments of error and affirm the juvenile court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On November 15, 2024, the Agency filed a complaint alleging A.K. was an abused, neglected, and dependent child. The same day, the juvenile court granted the Agency emergency temporary custody of the child.  After a hearing, the court continued temporary custody with the Agency.

_____
[1] A.K.'s father has not entered an appearance or otherwise participated in this appeal.

**{¶3}** On March 6, 2025, the juvenile court conducted an adjudicatory and dispositional hearing. An Agency employee testified that on November 12, 2024, A.K. was born to mother and father. The employee testified that the parents had been involved with the Agency prior to A.K.'s birth. The juvenile court admitted into evidence a May 22, 2023 judgment entry terminating their parental rights to A.K.'s sibling, S.K. Among other things, the entry states that S.K. was born on September 27, 2021, placed in the temporary custody of the Agency on October 8, 2021, and adjudicated dependent on November 18, 2021. The entry also states that when S.K. was born, she and mother both tested positive for marijuana, that father tested positive for amphetamine and methamphetamine on October 27, 2021, that the parents refused or avoided being drug tested during the pendency of the case, and that the parents had shown no interest in completing their case plan. Later during the hearing, the juvenile court stated that it had reviewed S.K.'s file and was taking judicial notice of the pleadings, allegations in the complaint which were admitted by the parents, and findings in S.K.'s case.

**{¶4}** The employee testified that the Agency received a report that mother tested positive for methamphetamine and amphetamine when A.K. was born, that A.K. showed signs of withdrawal in the hospital, and that the parents were unwilling to cooperate with hospital staff and social workers. On November 14, 2024, the employee went to the hospital, and "[t]here were multiple security guards on the unit due to the unwillingness to cooperate." The parents refused to speak to the employee. Based on the employee's investigation, she determined the allegation of methamphetamine use to be true. She developed a case plan which required, among other things, that the parents complete a drug and alcohol assessment, follow treatment recommendations, and submit to random

drug screens. The parents refused to sign the case plan and said they would not work the plan. Another Agency employee testified mother refused a request for a random drug screen, and under Agency policy, a refusal is considered a positive on all panels.

**{¶5}** Dr. Jason Tatka, a pediatric hospitalist for Nationwide Children's Hospital who works out of Adena Regional Medical Center, testified that he treated A.K. and had reviewed her medical records.  The records indicated that the day after A.K. was born, at 3:15 a.m., a nurse observed that A.K. had sweat beads on her forehead, tremors, and rapid respirations, which Dr. Tatka testified are "clinically suggestive of medication or drug withdrawal." Dr. Tatka testified that A.K.'s umbilical cord tissue tested positive for methamphetamine and amphetamine. Dr. Tatka testified that this "would suggest given general biology that the baby had been exposed to methamphetamine or amphetamine for some time" "so that that tissue absorbed that chemical or that substance." This suggested in utero drug exposure, "which can only have come from the ingestion via the mother."  In his medical opinion, in utero drug exposure creates a substantial risk to the child.

**{¶6}** Mother testified that she was positive for methamphetamine when A.K. was born but denied ever using methamphetamine. When asked to explain why she tested positive, mother testified, "I have documentations [sic] and pictures that I did not give a urine sample at that time that they said that at -- it was at 4:26 a.m., and I was on a stress test machine.  And I have documentations [sic] and pictures of it.  I did not give a sample." Mother also testified that "studies and stuff" said there were "like ten different medicines that can make you -- make a baby test positive" and that she was on one of them, ibuprofen. However, mother admitted that she is not a medical professional. Mother

acknowledged that she refused to do a drug screen requested by an Agency employee and that she had not completed any case plan services but claimed she had only gotten the case plan "just the other day." Father also testified.

{¶7} On March 12, 2025, the juvenile court issued an entry of adjudication and disposition. The court found by clear and convincing evidence that A.K. was an abused, neglected, and dependent child. The court found A.K. was an abused child under R.C. 2151.031(C)[2] because the medical records and testimony of Dr. Tatka demonstrated she had methamphetamine and amphetamine in her umbilical cord tissue. The court found A.K. was a neglected child under R.C. 2151.03(A)(2) because Dr. Tatka testified that the results of the umbilical cord testing demonstrated prolonged methamphetamine and amphetamine use by mother, which were faults and habits of mother, that the prolonged drug use placed A.K. at substantial health risk, and that A.K. demonstrated clear signs of withdrawal. The court found that A.K. was a dependent child under R.C. 2151.04(C) because her condition was such as to warrant the State, in her best interest, in assuming guardianship. The court also found that A.K. was a dependent child under R.C. 2151.04(D). The court stated that "having taken Judicial Notice of the case of S.K. . . ., the circumstances surrounding S.K.'s removal and Permanent Custody are substantially the same as those surrounding A.K." The court found that reasonable efforts were made to prevent A.K.'s removal from her home and ordered, pursuant to R.C. 2151.353(A)(2)(a), that A.K. remain in the Agency's custody for one year, to automatically terminate on November 15, 2025, unless a timely motion was filed with the court.

---

[2] The court's entry actually states that A.K. is an abused child under R.C. 2151.031(B), but this is a typographical error which the court evidently carried over from the complaint, which also cited R.C. 2151.031(B). The language used in the complaint actually implicates R.C. 2151.031(C), which was R.C. 2151.031(B) until the statute was amended by 2023 Am. Sub. H.B. 33, effective October 3, 2023.

## II.  ASSIGNMENTS OF ERROR

**{¶8}**   Mother presents three assignments of error:

Assignment of Error One – The trial court erred in finding by clear and convincing evidence that A.K. was abused pursuant to R.C. 2151.031.

Assignment of Error Two – The trial court erred in finding by clear and convincing evidence that A.K. was neglected pursuant to R.C. 2151.03(A)(2).

Assignment of Error Three – The trial court erred in finding by clear and convincing evidence that A.K. was dependent pursuant to R.C. 2151.04(C) and (D).

**{¶9}**   In her appellate brief, mother jointly argues her three assignments of error. "'While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments.'"  *State v. Rife*, 2012-Ohio-3264, ¶ 15 (4th Dist.), quoting *Keffer v. Cent. Mut. Ins. Co.*, 2007-Ohio-3984, ¶ 8, fn. 2 (4th Dist.).  Therefore, we would be within our discretion to disregard her assignments of error.  *Id*.  Nonetheless, we will review them.

## III.  LAW AND ANALYSIS

### A.  Abuse, Neglect, and Dependency Statutes

**{¶10}** Under R.C. 2151.031(C), an "abused child" includes a child who "[i]s endangered as defined in [R.C. 2919.22], except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]"  A child is endangered under R.C. 2919.22(A) if the child's parent creates "a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."  Under R.C. 2151.03(A)(2), a neglected child includes a child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]"  R.C. 2151.04(C) states that a dependent child includes a child "[w]hose

condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"   In addition, R.C. 2151.04(D) states that a dependent child includes a child to whom both the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

### B.  Standard of Review

**{¶11}**  R.C. 2151.35(A)(1) states:  "If the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, the court shall proceed, . . .  to hold a dispositional hearing and hear the evidence as to the proper disposition to be made under [R.C. 2151.353]."  "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶12}**  Because R.C. 2151.35(A)(1) requires that a juvenile court find by clear and convincing evidence that the statutory requirements for abuse, neglect, or dependency are met, sufficiency-of-the-evidence and/or manifest-weight of the evidence standards of review are the proper appellate standards of review of an abuse, neglect, or dependency finding, as appropriate depending on the nature of the arguments that are presented by

the parties.  *See by way of analogy In re Z.C.*, 2023-Ohio-4703, ¶ 11 (Because R.C.

2151.414 requires a juvenile court find by clear and convincing evidence that statutory

requirements for a permanent custody award are met, sufficiency-of-the-evidence and/or

manifest-weight-of-the-evidence standards of review are the proper appellate standards

of review of a permanent-custody determination, depending on the nature of the parties'

arguments).

{¶13}  The Supreme Court of Ohio has explained:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus.  We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, while weight of the evidence " 'is not a question of mathematics, but depends on its *effect in inducing belief* " (emphasis  sic), *id.* at 387, quoting *Black's  Law  Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when ' "the evidence is legally sufficient to support the jury verdict as a matter of law." ' " *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, quoting *Black's* at 1433.

But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.  *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and

judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at
fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at
191-192 (1978).

*Id.* at ¶ 13-14.

## C.  Analysis

**{¶14}** In her assignments of error, Mother contends that the juvenile court erred in finding by clear and convincing evidence that A.K. was abused, neglected, and dependent.  Mother cites *In re L.H.*, 2019-Ohio-2383 (12th Dist.), for the proposition that a dependency adjudication under R.C. 2151.04(D) requires proof that the child's sibling or any other child who resides in the household was adjudicated abused, neglected, or dependent before the dependency complaint for the child whose status is at issue was filed.  Mother suggests there was insufficient evidence to support a dependency finding under R.C. 2151.04(D) because there was no testimony regarding the date of  S.K.'s adjudication.   Mother also suggests there was insufficient evidence to support a dependency finding under R.C. 2151.04(D) because there was no evidence regarding the facts in S.K.'s case.  In addition, she asserts that the juvenile court "found the present circumstances of A.K. to be similar to those in" S.K.'s case, but "[t]he similarity of the circumstances is absent from the record."

**{¶15}** However, the record contains evidence regarding the date of S.K.'s adjudication and circumstances surrounding S.K.'s dependency—the judgment entry the juvenile court admitted into evidence.[3]  To make a dependency finding under R.C. 2151.04(D), the juvenile court did not have to find that the siblings' circumstances were

---

[3] Although the juvenile court orally stated that it was taking judicial notice of the pleadings, allegations in the complaint which were admitted by the parents, and findings in S.K.'s case and stated in its entry of adjudication and disposition that it had taken judicial notice of S.K.'s case, no documents from S.K.'s case are in the record on appeal aside from the judgment entry the court admitted into evidence.

similar, but the similarity is evident in this case.  A.K., like S.K., was born drug positive.  Therefore, we reject mother's contentions.

**{¶16}**  Mother also suggests that the abuse, neglect, and dependency findings are against the manifest weight of the evidence.  Mother maintains that the "only evidence" of abuse, neglect, and dependency was Dr. Tatka's testimony that mother "must be the cause of the drugs in the child." Mother claims the juvenile court erred in finding Dr. Tatka's testimony more credible than her testimony that she has never ingested methamphetamine and that she took ibuprofen during pregnancy, which can cause a false positive test result.

**{¶17}**  "A trier of fact is free to believe all, part, or none of the testimony of any witness, and appellate courts generally defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Tolle*, 2020-Ohio-935, ¶ 50 (4th Dist.), citing *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), and *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).  Dr. Tatka's testimony was not inherently incredible, and the juvenile court was free to believe the testimony of a medical professional over mother's testimony.  After weighing the evidence and all reasonable inferences and considering the credibility of the witnesses after according the requisite deference to the juvenile court's determinations, we conclude that in resolving conflicts in the evidence, the juvenile court did not clearly lose its way and create such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered.

**{¶18}** The juvenile court did not err in finding, by clear and convincing evidence, that A.K. was an abused, neglected, and dependent child. Accordingly, we overrule the first, second, and third assignments of error and affirm the juvenile court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
      Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**