[Cite as *State v. Wiggers*, 2026-Ohio-1410.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO, :
: Case Nos. 25CA5 & 25CA10
Plaintiff-Appellee, :
:
v. :
:
DAVID S. WIGGERS, SR., : DECISION AND JUDGMENT
: ENTRY
Defendant-Appellant. :
: **RELEASED: 04/08/2026**

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Nicole Coil, Washington County Prosecuting Attorney, and Kelsey R. Riffle, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

_____

Wilkin, J.

{¶1}  This is a consolidated appeal from two Washington County Court of Common Pleas judgment entries.  In Case No. 23CA5, David S. Wiggers, Sr. ("appellant") was convicted of domestic violence, a fourth-degree felony, under R.C. 2929.25(A).  In this case, appellant presents two assignments of error, challenging both the sufficiency and manifest weight of his conviction.  In Case No. 23CA10, appellant was found to have violated his community control, and, as a result, the trial court revoked his community control and imposed a 15-month prison sentence.  Appellant argues on appeal that the revocation of community control and imposition of a prison sentence was not supported by the record because he wanted to discuss the probation rules with his attorney before signing.

{¶2}   After reviewing the parties' arguments, the record, and the applicable law, we find no merit to appellant's assignments of error in either case. Therefore, we affirm the judgment of the trial court in both cases.

BACKGROUND

{¶3}   On October 25, 2023, appellant was indicted on a single count of domestic violence, a fourth-degree felony under R.C. 2919.25(A).  He waived his right to a jury trial, and the case proceeded to a bench trial on November 19, 2024.  At the trial, the State called the following witnesses:  Phillip J. Wiggers ("Phillip") his son Phillip N. Wiggers ("Phillip N."), and Deputy Thornberry.  The defense called appellant to testify.

{¶4}   Phillip was the first to testify.  He indicated that he is appellant's brother.  He testified that on October 1, 2023, he went to 35 Ridgewood Boulevard, in Belpre, Ohio, to retrieve a trailer frame left to him by his father.  He stated that the property is jointly owned by his mother, sister, appellant, and himself, with appellant residing in the house on the property.  Phillip was accompanied by his youngest son, Ethan, and his oldest son, Phillip N., who arrived later.  Upon arrival, they went directly to the trailer to prepare the frame for removal, but found it secured with cables and blocks.  Thus, Phillip told his son to grab a pair of bolt cutters to cut the cable.  Phillip testified that as they were preparing to cut the cable, appellant came out of the house swinging an axe handle and threatening to "kill a couple assholes."  Phillip indicated that this got his attention because appellant was "dangerous."  Phillip stated that appellant

swung the axe handle at him but missed, allowing Phillip to grab the handle and strike appellant with his fist.

{¶5}    Phillip further testified that after the initial confrontation, he pushed appellant against a building to prevent him from recovering and retaliating. Appellant's back was up against the building, causing them to be face-to-face. Phillip stated that appellant's "body weight had come down on me[,]" preventing him from getting up, causing injury to his hamstring.  Phillip started hollering for help.  His son Ethan intervened and wrestled appellant to the ground.  Phillip stated that he told Ethan to let appellant up, and when he did, appellant lunged at Phillip again.  As they fought, Ethan intervened again and was able to get appellant on the ground.  Phillip stated that appellant then left the scene and did not return.

{¶6}    Phillip confirmed that neither he, nor his sons, used the axe handle or any other weapon against appellant.  He also mentioned that he sought medical treatment for his hamstring injury, which required surgery and resulted in an infection, necessitating further medical care.

{¶7}    During the cross-examination, Phillip acknowledged that he did not inform appellant of his visit and hoped he would not be home to avoid any confrontation.  Phillip also had asked his mother to be at the property as a peacekeeper, but she did not arrive until after the altercation.  Phillip further indicated that he did not believe the trailer was titled, but it was "in [his] father's name at the time."

{¶8}   Phillip admitted to grabbing the axe handle with his left hand and punching appellant with his right hand in an attempt to stop him.  He confirmed that appellant did not hit him with the axe handle, nor kick or punch him during the altercation.  Phillip stated that he hit appellant at least six to eight times.  He did not recall appellant losing consciousness but mentioned that his son Ethan might have restrained appellant, possibly causing his rib injury.

{¶9}   Further, Phillip denied taking appellant 's keys or phone, stating they were on the ground and were given to the sheriff.  However, he acknowledged that he might have stated that he took the keys to unlock the trailer but did not remember the exact details.  Phillip admitted to causing appellant's orbital bone and nose injuries but was unsure about the rib injury.

{¶10}  Next to testify was Phillip N., Phillip's son.  On October 1, 2023, Phillip N. went to 35 Ridgewood Boulevard in Belpre, Ohio, to meet his brother and father to acquire a trailer.  Upon arrival, he observed appellant approaching his father and brother with what appeared to be a club or axe handle and heard appellant shouting threats.  Phillip N. stated that appellant swung the club at Phillip and missed, and then Phillip struck appellant.  The altercation moved towards a shed, where Phillip pinned appellant against the building.  Phillip N. noted that his father appeared injured, grabbing his leg and going to the ground, which led to his brother (Ethan) intervening to control the situation.  He did not see his father or brother pick up any weapons or strike appellant.

{¶11}  Phillip N. stated that law enforcement arrived at the scene, and he spoke to them about the incident.  Phillip N. acknowledged that he was there to

be a peacekeeper and had previously been a corrections officer.  He confirmed that his father pushed appellant against the shed and that his father's hamstring injury ended his physical involvement in the altercation.

{¶12}  Deputy Thornberry was next to testify.  Thornberry is employed by the Washington County Sheriff's Office and has been working there for two years, with a total of five years of law enforcement experience.  On October 1, 2023, Thornberry responded to a domestic call at 35 Ridgewood Boulevard in Belpre, Washington County, Ohio.  Upon arrival, he observed Phillip lying on the ground and inquired if he needed medical attention, to which Phillip responded that he would drive himself later if necessary.  Thornberry was not wearing a bodycam during the incident, so there is no recording of his investigation.  Phillip showed him an axe handle allegedly used during the incident, but Thornberry did not collect it as evidence.  After leaving the 35 Ridgewood Boulevard address, Thornberry went to another location where appellant was believed to be, intending to obtain a statement from him.  Appellant was in the back of an EMS vehicle but declined to make a statement because rib pain made it difficult to talk.  However, Thornberry indicated that appellant agreed to provide a statement at a later date, but he never did.  Thornberry observed that appellant appeared dazed and in pain during their interaction.  The Deputy claimed that his decision to arrest appellant was based on the statements of Phillip and witnesses present at the scene.

{¶13}  However, during cross-examination, Thornberry admitted that he did not separate the witnesses during the investigation, which is typically

recommended in an assault case.  Thornberry admitted that he was unaware of

Ethan Wiggers' involvement in the case until the day of the testimony.  He also

acknowledged that he did not obtain medical records related to the

incident.  Finally, Thornberry confirmed that Phillip, the alleged victim, stated in a

report that he punched and kicked his brother multiple times during the

altercation.

{¶14}  Appellant testified that he grew up at 35 Ridgewood Boulevard,

Belpre, Ohio, and has lived there continuously since March 2020.  He confirmed

that the property's title includes his mother, himself, his sister, and his brother, all

of whom were in the courtroom.  Appellant stated he was retired, but previously

worked as a carpenter and is a United States Navy veteran, having served from

1981 to 1984 at Pearl Harbor, Hawaii.  His father passed away in March 2022.

Appellant stated he has one brother (Phillip) and two sisters (Tia and Valissa).

{¶15}  Regarding the incident on October 1, 2023, appellant explained the

property situation, referencing a trailer that was once a camper, which he and

others stripped down; he planned on selling the tongue and using beams from it

to repair his house.  He told his mother about these intentions the day before the

incident.

{¶16}  On the day of the incident, appellant claimed he was sitting in his

living room watching the Browns football game when he noticed Phillip arriving in

a red truck.  He claimed that Phillip had a five-or six-foot wooden post.  Appellant

grabbed an axe handle from his house and went out to meet his brother, but

purposely did not yell or escalate the situation even though he was irritated.

{¶17}  Appellant testified that as he approached Phillip, he attempted to tell him to leave, but before he could say anything, Phillip lunged at him with the post, striking him in the middle of the chest.  Simultaneously, appellant claimed Phillip's son (Phillip N.) came from behind, placed an arm around his neck, and held him.  Appellant stated he recognized Phillip N. by his size.

{¶18}  Appellant asserted that after Phillip tossed the post aside and while being held by Phillip N., Phillip punched him in the face, breaking his nose. Appellant indicated he lost consciousness.  Upon regaining consciousness, he claimed he was lying beside the building with Phillip striking and threatening him. Appellant said Phillip N. then drove his head back into the ground, likely fracturing his orbital bone and he again lost consciousness.

{¶19}  Appellant described awakening to his dog licking him and sees Phillip instructing Phillip N. to remove cables from the trailer.  Appellant recounted rolling down a hill into a wooded area, crossing a creek to a neighbor's house, where he called for help and collapsed.  The homeowner and his son came to assist him and called 911.

{¶20}  Appellant explained that Phillip demanded his phone and keys but he threw them over Phillip's head in hopes of creating a distraction to escape. While at the neighbor's house, he informed the EMTs, who were treating him, that he had been hit with a post in the chest, kicked, suffered a broken nose, and had rib pain.

{¶21}  Certified copies of appellant's medical records were admitted into evidence as Defendant's Exhibit D.  Appellant read the records which stated that

he had been "assaulted by three other men, and he was able to escape them." He was "hit multiple times on the left side of his chest and ribs and was knocked to the ground." He stated that "he did lose consciousness when he was kicked in the head and face."

{¶22} On cross-examination, appellant was questioned about his statements to EMTs and hospital staff concerning his alcohol and marijuana use on the day of the incident. On direct examination, appellant testified that he only had two mixed drinks that contained two shots of alcohol. However, on cross-examination it was established that his medical records indicated he told the EMT he had four shots and smoked some marijuana, and that he told the hospital staff that he had consumed seven to eight shots. Appellant admitted smoking marijuana and having four shots, but denied telling the hospital staff that he had seven or eight shots.

{¶23} Upon the completion of appellant 's testimony, the defense rested, and the State had no rebuttal witnesses. Closing arguments were then conducted and the trial judge found appellant guilty as charged. The trial court sentenced appellant to 5 years of community control, restitution of $19,526.85, and 120 days in jail. Appellant filed a notice of appeal from this conviction on February 12, 2025.

{¶24} Subsequent to sentencing, the State filed a complaint charging appellant with violating his community control because "he failed or refused to sign his terms and conditions of community control." On January 28, 2025, the court held a probable cause hearing on the alleged violation. Appellant waived

probable cause and the court set a hearing on February 26, 2025, to resolve the complaint. The trial court then asked appellant if he understood that "[i]f you refuse to sign terms and conditions of community control, I have no option but to send you to prison because I can't put you on community control." Appellant indicated that he understood.

{¶25} On February 26, 2025, the trial court held the community control violation hearing. The court stated: "All right. So my understanding is [appellant] wants to admit to the motion and complaint charging a violation of community control and then argue sentencing?" Appellant's counsel responded affirmatively. The court also asked appellant if he admitted to the violation and appellant responded: "Yes sir." The court asked appellant if he understood by admitting to the violation the State no longer had to prove by clear and convincing evidence that appellant had violated his community control because "you're admitting it." Again, the appellant responded affirmatively. After the court confirmed that the parties had stipulated that there was a "factual basis for the violation[,]" it accepted appellant's admission.

{¶26} The court then proceeded with resentencing appellant. The prosecutor argued that a prison sentence was appropriate while defense counsel sought community control. In determining appellant's sentence, the court indicated that it "considered the record, the written reports, all oral statements made, and Ohio laws relating to the sentencing for a felony." The court further stated that

> it weighed the seriousness and recidivism factors, has considered
> the overriding purposes of felony sentencing, and that is

[necessary] to protect the public from future crime by the [appellant] and others, and to punish [appellant], using the minimum sanctions and that the court determines accomplishes those purposes, without imposing an unnecessary burden on state or local government, and having considered the need for incapacitating the [appellant] deterring the [appellant] from other future crime, rehabilitating the [appellant] and making restitution.

The court also found that appellant had been dishonest after trial and again at this hearing.

{¶27} The court then expressly revoked appellant's community control and found appellant was not amenable to community control. Instead, the court found that a prison term was consistent with the purposes and principles of sentencing, and imposed a definite prison term of 15 months with 102 days of jail-time credit plus transport time, and notified him of optional post-release control up to 2 years. Appellant filed a notice of appeal from this sentence on March 13, 2025.

{¶28} We sua sponte consolidated the appeals of his conviction in Case No. 25CA5 and of his re-sentencing in Case No. 25CA10 for purposes of this decision.

ASSIGNMENT OF ERROR ONE
CASE NO. 25CA5

APPELLANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE

{¶29} Appellant argues in his sole assignment of error in Case No. 25CA5 that his conviction for domestic violence was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. He contends that the

State failed to present adequate evidence to prove he committed the offense, as the trial court did not establish that he caused or attempted to cause physical harm to his brother, Phillip, a necessary element under R.C. 2919.25(A). Appellant emphasizes that the trial court's reasoning was based on an alleged swing at his brother, which he argues was not substantiated. Appellant highlights that his brother and nephew arrived uninvited to remove a trailer, and his actions were in response to their unexpected and aggressive behavior.

{¶30} Furthermore, appellant claims that the testimony from the State's witnesses was inconsistent and did not credibly establish his guilt. He points out that both witnesses testified he swung an axe handle but missed, while he testified he did not swing the handle because he was assaulted first and never had the chance. Appellant argues that he was the victim, suffering significant injuries, including a broken nose and fractured orbital bone, while his brother, who initiated the confrontation, was unharmed by any physical act of appellant. He concludes that the evidence showed his brother was a trespasser looking for a fight, and thus, the conviction should be vacated.

{¶31} Finally, appellant notes that his neighbor called the police. Appellant argues that logically, if his brother, Phillip was truly the victim, he would have called the police.

{¶32} The State argues that appellant's conviction for domestic violence was supported by sufficient evidence. The State highlights that appellant did not deny swinging an axe handle at the victim, which was corroborated by both the victim and an eyewitness. It argues that appellant's claim that he lacked intent to

cause harm is "preposterous," because swinging an axe handle at someone's head clearly implies an awareness of probable harm. Additionally, the State notes that appellant's actions during the altercation, such as putting his weight on the victim, resulted in injury, further supporting the sufficiency of the evidence.

{¶33} The State also argues that appellant's conviction is not against the manifest weight of the evidence. The State maintains that it introduced substantial evidence for all elements of the offense, and the jury did not lose its way. The State points out that two witnesses testified consistently that appellant was the only one with a weapon and that he swung it at the victim's head. The State disputes appellant's claim that he caused the victim no physical harm, stating that the victim's injury was a direct result of the appellant's actions.

{¶35} Regarding appellant's argument that logically Phillip would have called the police if he were the victim, the State maintains the use of logic rarely comes into play during a domestic violence situation, nor is it something that the State must prove. The State also emphasizes that the trial court's ability to observe witness testimony and note inconsistencies in the appellant's statements, contrasting them with the consistent testimony of the victim and eyewitness.

{¶36} Thus, the State concludes that there was both sufficient and substantial evidence to support the conviction, and the trial court did not err in its judgment.

A. Law

**{¶37}** Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, (1997), paragraph two of the syllabus.  "We have stated that 'sufficiency [of the evidence] is a test of *adequacy*,' . . . while weight of the evidence ' " ' . . . depends on its *effect in inducing belief*.' " ' " (Second italics original).  *In re A.K.*, 2025-Ohio-2935, ¶ 13 (4th Dist.), quoting *Thompkins*, at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).  "A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency."  *State v. Gonz*, 2024-Ohio-5885, ¶ 12 (4th Dist.), citing *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

**{¶38}** " 'In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.' "  *State v. Coleman*, 2026-Ohio-666, ¶ 19 (4th Dist.), quoting *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).  " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' "  *Id*, quoting *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶39} The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).

{¶40} In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.), citing *State v. Wilson*, 2014-Ohio-3182, ¶ 24 (9th Dist.), citing *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). " 'While the [trier of fact] may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences "sic" do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.).

"Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence." *State v. Nickell*, 2025-Ohio-1232, ¶ 44 (4th Dist.), citing *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.), citing *Volkman*, 2012-Ohio-2179, at ¶ 12, quoting

*Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990). "[A] reviewing court should find a conviction against the manifest weight of the evidence only in the " ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Id*. at ¶ 45, quoting *Thompkins*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

B.  Analysis

{¶41} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  Appellant contests that he knowingly caused or attempted to cause physical harm to his brother; thus, we will focus on those elements of the offense.

{¶42} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist."  R.C.  R.C. 2901.22(B).

{¶43} " 'When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime.' " *State v. Valladares*, 2018-Ohio-1250, ¶ 20 (3rd Dist.), quoting *State v. Ingram*,  2012-Ohio-4075, ¶ 22 (10th Dist.).  Culpable mental states are frequently established through circumstantial evidence.  *Id.*, citing *Ingram* at ¶ 22. " ' "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and

circumstances, including the doing of the act itself." ' " *State v. Jackson*, 2019-Ohio-170, ¶12 (3rd Dist.), quoting *State v. Miller* 2013-Ohio-3194, ¶ 30 (3rd Dist.), quoting *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001), citing *State v. Adams*, 1995 WL 360247, *4 (4th Dist. June 8, 1995). " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration.' " *Id.*, quoting R.C. 2901.01(A)(3).

{¶44} Appellant argues it is against the manifest weight of the evidence that he knowingly caused or attempted to cause physical harm to the victim. We disagree.

{¶45} Appellant admitted after he saw Phillip pulling into his yard, he exited his house with an axe handle in hand. Phillip testified that the appellant approached him swinging the axe handle, threatening to kill someone. Phillip further claimed that appellant swung the axe handle at his head but missed, and then he managed to wrestle the axe handle away from appellant. Appellant denied swinging the axe handle at Phillip, but Phillip N. corroborated Phillip's testimony. Phillip authenticated the photo of the axe handle admitted into evidence as the State's Exhibit 7, and Deputy Thornberry confirmed that State's Exhibit 7 was the axe handle shown to him at the scene.

{¶46} Appellant claimed in his testimony that Phillip used an object against him, but both Phillip and Phillip N. consistently denied appellant's assertion. Further, appellant's credibility was called into question as he gave conflicting accounts of alcohol consumption. He testified he consumed one-and-a-half mixed drinks and rejected a medical record indicating he consumed seven to

eight shots but then admitted telling EMTs he drank four shots.  Finally, appellant testified that he lost consciousness two times, yet his medical records failed to diagnose him with a concussion, casting doubt on appellant's memory and reliability.

{¶47} Merely because the court, which is the tier of fact in this case, believed the State's testimony does not make its verdict against the manifest weight of the evidence. *Chancey*, 2015-Ohio-5585 at ¶ 36 (4th Dist.).  Moreover, we find it is reasonable for a factfinder to infer that a person, who is swinging an axe handle at someone's head, is aware that their conduct will probably cause that person physical harm.  Therefore, we conclude that the State presented substantial evidence to support that appellant knowingly attempted to harm Phillip, thereby committing domestic violence.  This is not the rare case where the fact finder lost its way and created a manifest injustice.   Accordingly, we overrule appellant's assignment of error in case number 25CA5 and affirm the trial court's judgment of conviction.

ASSIGNMENT OF ERROR<br>CASE NO. 25CA10

THE TRIAL RECORD DOES NOT SUPPORT THE DECISION TO REVOKE APPELLANT'S COMMUNITY CONTROL AND IMPOSE A PRISON SENTENCE

{¶48} Appellant argues in his sole assignment of error in Case No. 25CA10 that the record does not support the trial court's decision revoking his community control and imposing a prison sentence.  He contends that the violation was based solely on his refusal to sign the terms and conditions of

probation.  He wanted to review the rules with counsel before signing and said he would comply after consulting his attorney.  He explained confusion about his sentence, which improved after seeing it on paper, and he reiterated his desire to comply.  Appellant admitted to the violation, but he characterizes the violation as minor and asserts he should not be punished for ignorance and lack of understanding.  Further, appellant emphasizes that he was never released from custody to demonstrate compliance with community control sanctions. Therefore, appellant requests this court to vacate his revocation of community control and remand the matter to the trial court for resentencing.

{¶49} The State argues that the record supports revocation because appellant refused to sign community control terms and conditions, which undermines enforcement and shows he is not amenable to supervision.  The State asserts the standard under R.C. 2953.08(G)(2) limits reversal to findings specified in subsection (a) or sentences otherwise contrary to law, and none of the enumerated findings apply to this fourth-degree domestic violence case.  The State contends appellant does not argue the sentence is contrary to law and cites no legal authority, so he provides no valid basis for reversal.  The State notes appellant admitted the violation, the trial court found him dishonest based on trial and violation proceedings, and the sentencing colloquy shows he understood the terms.  The State also points to appellant's criminal history, including contempt and prior probation violations shows unwillingness to comply, rather than ignorance.

{¶50} The State further rejects appellant's claim that custody prevented compliance, arguing he had an immediate opportunity to demonstrate compliance by signing the terms while still in custody.  The State concludes the trial court was not required to make findings under R.C. 2953.08(G)(2)(a), appellant did not argue the sentence was contrary to law.  Therefore, the State argues that assignment of error should be overruled.

### A.  Law

{¶51} Appellant maintains that "the trial court's record does not support the trial court's decision to revoke appellant's community control and impose a prison term."  We note that the revocation of community control and the subsequent resentencing imposed involve separate standards of review.

### 1.  Community Control

{¶52} The proper standard when reviewing decisions revoking community control is an abuse of discretion.  *State v. Stricklett*, 2025-Ohio-1247, ¶ 7 (4th Dist.), citing *State v. Mehl,* 2022-Ohio-1154, ¶ 7 (4th Dist.).  An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Cihon*, 2023-Ohio-3108, ¶ 19 (4th Dist.), citing *State v. Adams,* 62 Ohio St.2d 151, 157-158 (1980).  "Once a court determines that community control should be revoked and a prison term imposed, the trial court's sentencing decision is reviewed under the standard set forth in R.C. 2953.08(G)(2)." *Stricklett* at ¶ 8, citing *Mehl* at ¶ 15; *State v. Marcum,* 2016-Ohio-1992, ¶10.

### 2. Prison Sentence

{¶53} R.C.  2953.08(G)(2) provides that

[t]he court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That *the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant*;

(b) That the sentence is otherwise contrary to law.

(Emphasis added.)

## B. Analysis

## 1. Community Control

{¶54} In his appeal, appellant vaguely claims that he "did not fully understand everything" regarding his community control. The requirement to obey his community control, which included signing its terms and conditions, was not a complicated obligation. Further, as noted by the trial court during the appellant's initial sentencing, he has a criminal history that includes a probation violation in an OVI case. Thus, it seems unlikely that appellant was unfamiliar with the obligations of community control.

{¶55} After his conviction for domestic violence, appellant requested a community control sentence. The court agreed but warned him that he must obey the terms and conditions provided by the probation department. The court specifically instructed appellant that he would have to "sign off on [the term and conditions of his community control]." The court informed appellant that if he

violated his community control, he could be subject to a prison term.  Appellant

ensured the court that he would comply with the terms and conditions of

community control.  Despite the court's admonitions and appellant's promises,

appellant refused to sign the document that acknowledged the terms and

conditions of his community control.

{¶56} At his probable cause hearing on his community control violation,

appellant waived probable cause and agreed to proceed directly on the State's

complaint. The court informed appellant that refusing the terms and conditions of

community control left the court no option but to send him to prison.  Appellant

indicated that he understood.

{¶57} Finally, and perhaps most important to our analysis, several weeks

after his probable cause hearing at his community control revocation hearing,

appellant *admitted* that he violated his community control sentence.

{¶58} Appellant was aware from the date of his initial sentencing and was

reminded numerous times by the court in subsequent proceedings that he had to

comply with his community control or he would likely be sentenced to prison.  Yet

he failed to do so even though, as divulged at his initial sentencing hearing,

appellant had a criminal history including a parole violation.  Thus, appellant's

argument that he did not understand his obligation under community control rings

hollow.[1]

{¶59} Under these facts, we find that the trial court's revocation of

appellant's community control sentence was not unreasonable, arbitrary, or

---

[1] *In State v. Talty*, the Supreme Court recognized that "community control is the functional equivalent of probation[.]"  2004-Ohio-4888, ¶ 16.

unconscionable.  Therefore, we find that the trial court did not abuse its discretion in doing so.

## 2. The Prison Term

**{¶60}** Similar to *Stricklett*, because appellant admitted to a violation of his community control that resulted in resentencing to a prison term, appellant's resentencing to an 15-month prison term is reviewed under R.C. 2953.08(G)(2). *Stricklett*, 2025-Ohio-1247, ¶ 7 (4th Dist.).  In part, R.C. 2953.08(G)(2), permits this court to vacate a sentence if the record does not clearly and convincingly support certain specified findings, or if the sentence is "otherwise contrary to law."  See *State v. Burnett*, 2025-Ohio-5307, 32-33 (4th Dist.).  Appellant does not assert that his sentence is contrary to law.  Instead, appellant's assignment of error asserts only that the trial court's record does not support the decision to impose a prison term.  In pertinent part, R.C. 2953.08(G)(2) provides that:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following: (a) That the *record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code*, whichever, if any, is relevant.

(Emphasis added.)

**{¶61}** This language permits an appellant to challenge the trial court's findings under R.C. 2923.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), or R.C. 2929.20(I) arguing that the record does not support the appellant's sentence. *See State v. Huges*, 2021-Ohio-3127, ¶40-41 (4th Dist.).  "However, R.C. 2953.08(G)(2) does not give appellate courts broad authority to review sentences

to determine if they are supported by the record." *State v. Jones,* 2020-Ohio-6729, ¶ 27.

{¶62} In the instant case, appellant does not identify R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), or R.C. 2929.20(I) as applying in his case, let alone whether the court made any findings regarding their application. Consequently, he was also unable to argue that any required findings were unsupported by the trial court's record. "[I]t is not the role of an appellate court to cobble together an argument for an appellant." *State v. Clark*, 2025-Ohio-4410, ¶ 23, citing *State ex rel. McKenney v. Jones*, 2022-Ohio-583, ¶ 28, quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 19 ("It is not the role of this court to 'search the record or formulate legal arguments on behalf of the parties.' ").

{¶63} For the aforementioned reasons, in Case No. 25CA10, we find that appellant's assignment of error that the trial court's record does not support the trial court's decision to revoke appellant's community control and impose a prison term lacks merit. Therefore, we affirm the trial court's revocation of appellant's community control and his resentencing to a 15-month prison term.

CONCLUSION

{¶64} Pursuant to the analyses infra, we affirm appellant's conviction in Case No. 25CA5 and the trial court's revocation of appellant's community control and imposition of a 15-month prison term in Case No. 25CA10.

**JUDGMENTS AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENTS ARE AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**